# Bronson *versus* Lane et al.

1. By four separate deeds B. granted to C. for ninety-nine years, two tenth parts of the oil and mineral rights, saving and excepting lead ore, in certain land: to D. three tenths, to E. two tenths, and to F. three tenths. There was no other reservation or exception save the lead ore. There was also an express grant of the right to enter upon said premises and bore for oil, free right of ingress and egress, the right to erect derricks and other necessary structures, and to use the timber growing on the land for fuel and building purposes. *Held*, affirming the court below, that under these four deeds the grantees were tenants in common, with the exclusive right to all the oil on the land for the term of ninety-nine years; that under the terms of said deeds there was an express grant of exclusive occupation of so much of the land as was necessary for the enjoyment of the thing granted; and that the grantees had the right to divide the land into small tracts and lease the same, with the right to the lessees to enter upon such tracts for the purpose of taking the oil therefrom.

2. In ejectment for the land by A., the sheriff returned the writ as "served" upon the defendants, and the latter pleaded "not guilty," but at the trial proved that what they possessed they rightfully possessed under the grant, and as to the residue disproved possession. *Held*, that the prima facies of the sheriff's return was thus met and rebutted; that the plaintiff's claim was for the whole, and defendants had a right to a general verdict.

3. Per Sharswood, C. J. The verdict and judgment did not establish title to the whole surface. It is always competent to establish by parol evidence, where it does not contradict the record, what the extent of the claim was upon which there has been a recovery.

June 24th 1879. Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey and Sterrett, JJ. Woodward, J., absent.

Error to the Court of Common Pleas of *McKean county:* Of May Term 1879, No. 180.

Ejectment for a tract of land in McKean county, brought by William W. Bronson against R. T. Lane and others. The writ was returned "served" on the defendants, who pleaded "not guilty."

[Bronson *v.* Lane.]

Bradford I. Taylor being seised in fee-simple of two tracts or parcels of land situate in McKean county, Pennsylvania, the one containing one thousand two hundred and thirty and forty-nine one-hundredth acres, and the other ninety-seven and fifty-two one-hundredth acres, he and his wife executed four deeds, all dated the 1st day of March 1876, by one of which deeds it is witnessed, that the said Taylor and wife, the parties of the first part thereto, in consideration of the sum of $3984, received from Frederick Prentice, of the city of New York, of the second part, "have granted, sold, aliened, enfeoffed, released and confirmed, and by these presents, do grant, sell, alien, enfeoff, release and confirm unto the said party of the second part hereto, his heirs and assigns, the undivided two-tenths (2-10) part of the oil and mineral right, saving and excepting lead ore, of, in and to," the two above mentioned tracts of land, describing the same by metes and bounds.  "Together with the right to enter upon the said premises to dig or bore for oil or other minerals, saving and excepting lead ore ; free right of ingress and egress, the right to erect such and so many derricks and engine-houses and other structures as may be needed in the legitimate business of prospecting for, producing and transporting oil or other minerals, the right to use so much of the timber growing upon the said land as may be needed for fuel in operating the same, and such timber as may be required for the erection of derricks and engine-houses upon the same.   The right hereby conveyed, and the privileges therein annexed to continue for a term of ninety-nine years from the date hereof, and then to revert to the grantor herein, his heirs or assigns.   To have and to hold the oil and mineral right hereby granted, with the privileges unto the said party of the second part hereto, his heirs and assigns, to and for the only proper use of the party of the second part hereto, his heirs and assigns for the term herein granted.   And the said Taylor and wife, their heirs, executors, covenant, grant and agree to and with the said party of the second part, his heirs and assigns, that they will warrant and defend the said oil and mineral right against all persons whomsoever lawfully claiming the same, for the term of years and purposes herein granted or mentioned.   Reserving to the said first party herein the right to enter upon said land for the purposes of tillage, except so far as they may be needed for the purposes of this grant.   Also, reserving the timber not herein conveyed, and the right to enter and remove the same.   Generally reserving all rights not specifically conveyed."

By another of the said deeds, Taylor and wife, for the consideration of $5976, received from Stillman L. Wilson, of Connecticut, granted to him the undivided three-tenths (3-10) part of the same oil and mineral right, and by another of said deeds, for the consideration of $3984, received of Charles S. Whitney, of McKean county, granted to him the undived two-tenths (2-10)

[Bronson *v.* Lane.]

part of the same oil and mineral right; and by the other deed, in consideration of $5976, received from Lewis Emery, Jr., of McKean county, granted to him three-tenths (3-10) part of the same oil and mineral right, the three deeds to Wilson, Whitney and Emery, respectively, being each in form and phraseology, identical in all material parts excepting as above mentioned.

By his deed dated the first day of June 1877, Frederick Prentice conveyed to The Producers Consolidated Land and Petroleum Company, one undivided fifth part of a tract of land called the Mack tract, which embraces, it is said, the lands described in the deeds of Bradford I. Taylor, before mentioned, and it was admitted on the trial that Stillman L. Wilson conveyed whatever rights he obtained by his deed to Lewis Emery, Jr., and that he, Lewis Emery, Jr., made a conveyance to John Eaton for the undivided two-tenths (2-10) parts of the land in question, and also made a deed purporting to convey the undivided three-twentieth (3-20) parts of the right to C. S. Whitney & Son.

These parties claiming under the aforesaid deeds of Taylor and wife, treated and dealt with the land as if they were owners of the soil. They had it all surveyed off into small lots, containing about twenty acres each, and leased these lots from time to time to different persons for terms of twenty years, reserving as rent from each person or firm to whom they rented a lot or lots, a specified portion of the oil obtained.

By their deed dated the 7th of March 1878, Taylor and wife conveyed the said tract of twelve hundred and thirty and forty-nine one-hundredths acres to William W. Bronson, in fee simple, for the consideration of $6100, this last-mentioned deed containing the following clause, viz.: "This conveyance, however, is made subject to all the rights and privileges granted by the party of the first part to Frederick Prentice, Stillman L. Wilson, Charles S. Whitney and Lewis Emery, Jr., by four several conveyances bearing date the first day of March 1876."

Bronson, finding that he was entirely excluded from the land he had bought, by the tenants of the parties claiming under the four deeds of the 1st of March 1876, on the 6th of June 1878, issued a writ of ejectment for two hundred and ninety-seven and one-half acres, part of the tract of twelve hundred and thirty and forty-nine one-hundredths acres, against the persons he found in possession of that part of the land, and afterward Lewis Emery, Jr., C. S. Whitney, H. P. Whitney, Frederick Wheeler, John Eaton and The Producers Consolidated Land and Petroleum Company, claiming to be the landlords of these defendants, applied to the court below to be, and thereupon were, made co-defendants, in the action, and permitted to defend as landlords; and on the trial the defendants gave in evidence the leases made by said landlords of parts of the land claimed by plaintiff in this action.

[Bronson *v.* Lane.]

The plaintiff submitted the following points:

1. That the four deeds of Taylor and wife to Prentice, Wilson, Whitney and Emery, respectively, each dated the 1st day of March 1876, together grant but a joint license to the said Prentice, Wilson, Whitney and Emery, to take oils and minerals other than lead ore for the term of ninety-nine years.

2. That said deeds together or separately grant no right or power to the said grantees, or to their assigns, or to any of them, to divide the land into parcels, and lease the parcels to different persons, with the right to enter upon such different parcels of the land for the purpose of gaining and taking oil therefrom or to possess the said several parcels, or any of them by the tenants or licensees of the said grantees or of their assigns.

3. That all the leases given in evidence by the defendants were made by the lessors, who had no right to make such leases, and that the entry of each lessee on that part of the land leased to him by the said lessors operated as a disseisin of the plaintiff as to the whole of such part so leased, and that under all the evidence in this cause the verdict of the jury ought to be in favor of the plaintiff for all the land described in the writ of ejectment.

The court, Williams, P. J., declined to affirm these points, and in the general charge, inter alia, said:

"This is an action of ejectment by means of which the plaintiff seeks to recover the possession of about three hundred acres of land in Bradford township. He shows a title in himself in fee-simple. The sheriff's return is by an Act of Assembly made evidence, prima facie, that the defendants are in the actual adverse possession of the land described in the writ. If the case had ended here the plaintiff would have been entitled to your verdict.

"The defendants by way of reply allege that they have at no time held or claimed the right to hold possession of the said land or any part of it except for the single purpose of procuring oil. In the effort to procure oil they allege that they have at no time occupied any portion of this land not actually necessary for the proper prosecution of the work of drilling for, taking and transporting oil. This possession they allege they have a legal right to take and hold by virtue of the several deeds from B. I. Taylor and wife for the 'oil and mineral right,' which have been given in evidence.

"This fully meets the plaintiff's case. It denies any general possession such as the writ charges and its service establishes prima facie. It admits a limited possession for a particular purpose, and justifies it. Upon both points the evidence is satisfactory and wholly uncontradicted.

"But the plaintiff asks us to give you instructions upon certain points which would result in the withdrawal of the case from you and the determination of the validity of the defendant's title by

the court. We decline to affirm these points. On the contrary, we hold that the several deeds of Taylor and wife, dated March 1st, 1876, under which the defendants claim did pass to the grantees named therein, respectively, an interest in land; that such interest is not to be held in common with the grantor, but is exclusive of him and all claiming under him, and that the division of the surface into lots, and the letting of these lots to different persons to be by them operated separately for oil does not work a forfeiture of the rights of the grantees of said Taylor.

" These rulings leave no question, whatever, for the determination of the jury. They place the case very squarely on the real questions in it. As the necessary result of these views, we now say to you, that under the uncontradicted evidence in the case, your verdict should be in favor of the defendants."

The verdict was for defendants accordingly, when plaintiff took this writ, and alleged that the court erred in refusing the plaintiff's points, and in charging as above noted.

*David Sterrett* and *Joshua W. Comly*, for plaintiff in error.— This oil right is but a license to take oil from the land, irrevocable, but with the common-law qualities of a license to take profits from the land of another person. The Supreme Court has never decided an oil right to be a corporeal right or interest in the soil itself: Funk *v.* Haldeman, 3 P. F. Smith 229; Dark *v.* Johnston, 5 Id. 164. As we understand these decisions it is impossible for an oil right, unaccompanied by a lease or grant of the land upon which it is to be exercised, from the nature of the oil, to be anything else than a mere incorporeal interest—a license and not an interest or estate in land. The lands were only to be used as a means of procuring the oil, from whatever source it could be obtained, by means of wells upon it. This use of the land, and the right to cut and take timber, did not convert the license into a corporeal interest: Lord Mountjoy's Case, Co. Litt. 164 b; Hanly *v.* Wood, 2 B. & Ald. 724. Such a license is not exclusive of the grantor, and could not be divided, but could only be used and enjoyed by the grantees acting together: Lord Mountjoy's Case, *supra;* Chetham *v.* Williamson, 4 East 469; Grubb *v.* Bayard, 2 Wall., Jr., 81; Caldwell *v.* Fulton, 7 Casey 475; Van Rensselaer *v.* Radcliffe, 10 Wend. 639; Lyman *v.* Abeel, 16 Johns. 30; Funk *v.* Haldeman, *supra.* The grants contain no words of exclusion. The grant of the oil right certainly does not authorize the grantees to divide the land into twenty-acre lots, for the purpose of taking the oil. If so, they should have contracted for such privileges, and paid therefor.

The plea of "not guilty," without a disclaimer, was an admission by the defendants that they were in possession of all of the land mentioned in the writ of ejectment: Ulsh *v.* Strode, 1 Harris

[Bronson *v.* Lane.]

437; Steinmets *v.* Logan, 3 Watts 162; Hill *v.* Hill, 7 Wright 521.

*William D. Brown, A. G. Olmsted* and *George A. Berry,* for aefendants in error.—The Act of April 13th 1807 was intended to make the sheriff's return evidence only of the fact and not the extent of the right of possession. An incorporeal right is invisible, has a mental existence only, cannot be delivered from hand to hand, is not the subject of bodily possession, or visible transfer. Such are not the characteristics of the rights conveyed by the deeds of Taylor. It is to be noted that these deeds convey all the oil and minerals; that for ninety-nine years the grantees have the exclusive right to the very substance. To have and to hold all the oil and mineral right in a tract of land is a conveyance of an interest in the land.

It is impossible to conceive of words better calculated than these to confer absolute dominion over the very substance of the oil and minerals. The rights of the grantees are exclusive of the grantor and of every one else, and hence are not within the class of cases which hold that a right in common is incorporeal. Their rights are not limited to persons or purposes. They are not limited as to quantity, and hence not within the principle of the Lord Mountjoy and kindred cases, where the right is to take sufficient for a specified purpose only. The grant is not only of an exclusive right, but it is in consideration of a large sum in hand paid, and hence not within the principle of Chetham *v.* Williamson, 4 East 469; Grub *v.* Bayard, 2 Wall. 81; Dark *v.* Johnston, 5 P. F. Smith 164, and other cases cited, where by the terms of the agreement the oil or mineral only vests in the grantee as a chattel when and as the same is taken out of the earth.

A conveyance of the exclusive right to take oil, does not differ from the right to take coal. Although a fluid, and hence of a fugitive nature, it is nevertheless a corporeal substance. It is land: Dark *v.* Johnston, *supra;* and a mineral: Funk *v.* Haldeman, *supra;* a corporeal interest: Chicago & Allegheny Oil and Mining Co. *v.* United States Petroleum Co., 7 P. F. Smith 83.

Leases to mine coal or dig clay are estates in land: Funk *v.* Haldeman, *supra;* Sheets *v.* Allen, 8 Norris 47. The general usage is for the grantee of the oil right to divide the land into convenient parcels, sub-leasing the same, and reserving a royalty or rent. To strike down such titles would destroy the oil business.

Chief Justice SHARSWOOD delivered the opinion of the court, October 6th 1879.

The argument in this case took a wide range, embracing many topics of great interest and importance which, however, we do not deem it necessary to consider. In the view which we take the

questions involved lie in a very narrow compass.    There can be no doubt we think upon the true construction of the four deeds from Taylor and wife to the several grantees, under whom the defendants below showed title, that the exclusive right to all the oil in the land described passed to them for the term of ninety-nine years.    To Prentice was granted " two-tenth parts of the oil and mineral rights, saving and excepting lead ore;" To Wilson, " three-tenths;" to Whitney " two-tenths;" to Emery " three-tenths."    There is no reservation or exception of any part of the oil and mineral rights to the grantor except the lead ore.    Under these deeds the grantees were tenants in common.    They were not mere grants of an incorporeal right to dig and take in common with the grantor to which the principle of Lord Mountjoy's case applies.    There was also expressly granted " the right to enter upon the said premises to dig or bore for oil or other minerals, saving and excepting lead ore ; free right of ingress and egress, the right to erect such and so many derricks and engine houses and other structures as may be needed in the legitimate business of prospecting for, producing and transporting oil or other minerals, the right to use so much of the timber growing upon the said land as may be needed for fuel in operating the same, and such timber as may be required for the erection of derricks and engine houses upon the same."    Very plainly then there is an express grant of exclusive occupation of so much of the land as was necessary for the enjoyment of the thing granted.    It has been objected that upon so broad a construction, the grantees might sink a well on every acre of the land and thus effectually deprive the grantor of the entire surface.    This might be so—but practically it was in the highest degree improbable.    The grantor evidently had no such fear, and if he had should have provided against it by limiting the number of wells or the surface space to be appropriated.

We have failed to discover any evidence sufficient to be submitted to the jury which showed possession by the defendants more than under their deeds they had a right to have.    The instruction of the learned judge on this subject was entirely right.    Much stress was laid in the argument on the fact that there was no disclaimer by the defendants of right to any part of the surface. No point as to this seems to have been made on the trial.    But disclaimer is never necessary though it may sometimes be advantageous to defendants as regards costs.    The plea in ejectment by the Act of 1807 is "not guilty."    The defendants proved that whatever they possessed, they did rightfully possess under their grants and as to the residue disproved possession; thus the prima facies of the sheriff's return was met and rebutted.    The plaintiff's claim was for the whole, and defendants had a right to a general verdict; Bratton *v.* Mitchell, 5 Watts 70 ; Zeigler *v.* Fisher, 3 Barr 365 ; McCanna *v.* Johnston, 7 Harris 434 ; Tripner *v.* Abra-

[Bronson *v.* Lane.]

hams, 11 Wright 230.   The verdict and judgment did not establish
title to the entire surface.   It is always competent to show by parol
evidence, where it does not contradict the record, what the extent
of the claim was upon which there has been a recovery :  Coleman's
Appeal, 12 P. F. Smith 252.

Judgment affirmed.